01

02

03

04

05

06                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
07                                    AT SEATTLE

08   CHARLES L. BIBBS,                          )
                                                )
09          Plaintiff,                          )   CASE NO. C08-1620-TSZ
                                                )
10          v.                                  )
                                                )   REPORT AND RECOMMENDATION
11   TUKWILA POLICE DEPARTMENT, *et al.*,       )
                                                )
12          Defendants.                         )
     _____        )

13

14                     INTRODUCTION AND SUMMARY CONCLUSION

15          This is a civil rights action brought under 42 U.S.C. § 1983.  Plaintiff alleges in this

16   action that three members of the Tukwila Police Department, Officers Brian Jordan and Mike

17   Richardson, and Sergeant Steven Gurr, violated his federal constitutional rights during the

18   course of an arrest in January 2007.  Plaintiff seeks damages, attorney's fees and costs.

19   Defendants now move for summary judgment.  Plaintiff opposes defendants' motion.  This

20   Court, having reviewed defendants' motion, plaintiff's response thereto, and the balance of the

21   record, concludes that defendants' motion for summary judgment should be granted and that

22   plaintiff's amended complaint, and this action, should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE -1

01                        FACTUAL/PROCEDURAL BACKGROUND

02          On January 14, 2007, plaintiff was arrested by Tukwila Police Officers after shoplifting

03   merchandise from the Nordstrom Department Store at Southcenter Mall and attempting to

04   evade loss prevention personnel.   (*See* Dkt. No. 32 at 3; Dkt. No. 60, Exs. 1-4.)   The incident

05   began when Nordstrom loss prevention personnel observed plaintiff enter the lingerie

06   department, remove three women's tops from their hangers, and place them under his jacket.

07   (Dkt. No. 60, Ex. 1.)   After exiting the store without having paid for the concealed

08   merchandise, plaintiff was confronted by loss prevention personnel and was asked to return

09   inside the store.   (*Id*.)   At that point, plaintiff began to run in the direction of a nearby

10   restaurant with loss prevention officers in pursuit.   (*Id*.)

11          Loss prevention officers lost sight of plaintiff as he ran behind the restaurant.   (*Id*.)

12   After officers searched the parking lot and failed to locate plaintiff, one of the officers

13   approached the front entrance of the restaurant intending to look for him inside.   (*Id*.)   As the

14   officer approached the entrance, plaintiff was stepping out of the restaurant and he began to run

15   again when the officer attempted to make contact with him.   (*Id*.)   Plaintiff ran north across

16   Southcenter Parkway with loss prevention officers again in pursuit.   (*Id*.)

17          During the pursuit, one of the loss prevention officers contacted the Tukwila Police.

18   (*Id*.)   Officer Brian Jordan responded to the scene and was driving down Southcenter Parkway

19   when he saw plaintiff run across the street.   (*Id*., Ex. 2.)   Officer Jordan stopped his vehicle

20   and confirmed with the loss prevention officers, who were still in pursuit, that the individual he

21   had seen was the shoplifting suspect.   (*Id*.)   Officer Jordan then followed plaintiff into a large

22   gully where he found plaintiff knee deep in water near a drainage pipe.   (*Id*.)   Officer Jordan

REPORT AND RECOMMENDATION
PAGE -2

01 drew his gun, pointed it at plaintiff, and ordered him to climb up out of the ditch.  (*See* Dkt. No.

02 32 at 3; Dkt. No. 60, Ex. 1.)   Plaintiff climbed up an icy slope towards Officer Jordan, slipping

03 a couple of times along the way.  (*See id*.)

04      The foregoing facts are largely agreed upon by the parties.   The dispute in this action

05 concerns what happened once plaintiff reached to the top of the slope.   According to the

06 allegations in the amended complaint, after plaintiff climbed up the slope on his own, Officer

07 Jordan grabbed him and pulled him ten feet through snow and ice causing plaintiff's head to hit

08 a rock.  (Dkt. No. 32 at 3.)   Officer Jordan then kneed plaintiff several times in the back as

09 plaintiff lay on the ground, with his hands behind him, attempting to surrender.  (*Id*. at 3-4.)

10 Plaintiff claims that he was beginning to lose consciousness when Officer Richardson came

11 over, pushed his face into the snow, and kneed plaintiff several more times in his back and ribs.

12 (*Id*. at 4.)   According to the amended complaint, Officer Richardson then kicked plaintiff

13 several more times after he was handcuffed.  (*Id*.)

14      The police officers thereafter hoisted plaintiff up and Officer Jordan walked him

15 towards a supervisor's patrol car.  (*Id*.)   Plaintiff asked the supervisor, Sergeant Gurr, why he

16 had allowed the officers to hurt him.  (*Id*.)   Sergeant Gurr allegedly replied "shut-up nigger,

17 stay in your place" and "[t]hey should have done more to your dumb ass."  (*Id*.)   Sergeant

18 Gurr then laughed and instructed Officer Jordan to place plaintiff in the patrol car.  (*Id*.)

19 Officer Jordan shoved plaintiff into the car and pushed him down into the backseat causing

20 plaintiff to hit his head on the door frame.  (*Id*.)

21      Defendants' version of events is set forth in reports written by Officers Jordan and

22 Richardson following the incident on January 14, 2007, which were submitted in support of

REPORT AND RECOMMENDATION
PAGE -3

01  defendants' summary judgment motion.  (*See* Dkt. No. 60, Exs. 2 and 3.)  According to

02  Officer Jordan's report, once plaintiff climbed out of the ditch, he immediately grabbed

03  plaintiff and pulled him to the ground into a prone position.  (*Id.*, Ex. 2.)  Plaintiff initially had

04  his hands under his body and Officer Jordan yelled at him to put his hands behind his back, but

05  plaintiff did not immediately comply.  (*Id.*)  Officer Richardson then arrived on the scene to

06  assist.  (*Id.*)  Officer Jordan performed an arm bar maneuver and managed to get plaintiff's

07  right arm behind his back.  (*Id.*)  Plaintiff then quickly put his left arm behind his back and

08  Officer Jordan handcuffed him without incident.  (*Id.*)

09          According to Officer Richardson's report, when he arrived at Officer Jordan's location,

10  he saw Officer Jordan struggling with plaintiff on the ground and he heard Officer Jordan direct

11  plaintiff to put his hands behind his back, but plaintiff was non-compliant.  (*Id.*, Ex. 3.)

12  Plaintiff resisted Officer Jordan's efforts to handcuff him by first tucking his arms in and then

13  straightening them out to the side and tensing them thereby making it difficult to get plaintiff's

14  hands behind his back.  (*Id.*)  Officer Richardson assisted Officer Jordan by delivering one

15  elbow strike to the right side of plaintiff's body followed by one knee strike to the left side of

16  plaintiff's body.  (*Id.*)  Plaintiff then immediately complied by putting his hands behind his

17  back and he was handcuffed without further incident.  (*Id.*)

18          According to Sergeant Gurr, who submitted a declaration in support of defendants'

19  summary judgment motion, he responded as a supervisor to the call involving the shoplifting

20  incident because the suspect had fled on foot and was attempting to elude officers.  (Dkt. No.

21  59 at 1.)  By the time Sergeant Gurr arrived on the scene, plaintiff was already in handcuffs and

22  Officer Jordan was leading him to the patrol car.  (Dkt. No. 59 at 2.)  Plaintiff was thereafter

REPORT AND RECOMMENDATION
PAGE -4

01  placed in the patrol car and transported to the police station for booking.   (*Id.*)

02       Officer Jordan's report states that plaintiff began to complain of pain in his right

03  shoulder while at the station and that plaintiff explained he had hurt his shoulder while climbing

04  out of the ditch.   (Dkt. No. 60, Ex. 2.)   The Tukwila Fire Department responded to the police

05  station, evaluated plaintiff, and determined that he needed to be transported to the hospital for

06  further evaluation.   (*See id.*)   Plaintiff was issued a citation for the shoplifting offense,

07  released from police custody, and transported to the Valley Medical Center via Tri-Med

08  Ambulance for further evaluation of his shoulder injury.   (*See id.*; Dkt. No. 28, Ex. B.)

09       Once at the hospital, plaintiff was evaluated by emergency room personnel and x-rays

10  were taken of plaintiff's right shoulder and right heel.   (*See* Dkt. No. 28, Ex. 2.   *See also*, Dkt.

11  No. 62, Attachment at 4-12.)   Plaintiff was diagnosed with a strained right shoulder, foot pain,

12  and an abrasion to his right arm, and he was given a prescription for Vicodin.   (*See id.*)

13       On November 5, 2008, plaintiff submitted his original civil rights complaint to this

14  Court for filing.   (*See* Dkt. No. 1.)   Plaintiff alleged therein violations of state and federal law

15  arising out of his January 2007 arrest, and he identified the Tukwila Police Department, Officer

16  Jordan, Police Chief David Haynes, Officer John Doe I, and Supervisor John Doe II as

17  defendants.   (*See* Dkt. No. 7.)   Plaintiff's complaint was ordered served on the Tukwila Police

18  Department, Officer Jordan and Chief Haynes.   (Dkt. Nos. 8 and 9.)

19       On February 3, 2009, defendants filed a motion to dismiss a majority of plaintiff's

20  causes of action under Rule 12 of the Federal Rules of Civil Procedure.   (Dkt. No. 17.)

21  Shortly thereafter, plaintiff submitted a proposed amended complaint.   (Dkt. No. 18.)   On

22  May 29, 2009, the Court, the Honorable Thomas S. Zilly, United States District Judge, granted

REPORT AND RECOMMENDATION
PAGE -5

01   in part and denied in part defendants' motion to dismiss, and granted plaintiff leave to amend.

02   (*See* Dkt. No. 31.)   The Court specifically permitted plaintiff to proceed on the Fourth, Eighth,

03   and Fourteenth Amendment claims asserted in his amended complaint against Officer Jordan,

04   Officer Richardson, and Sergeant Gurr.   (*See id.*)   The Court dismissed all other claims.   (*Id.*)

05         On November 19, 2010, defendants filed the motion for summary judgment which is

06   currently pending before the Court, along with supporting documents.   (Dkt. Nos. 57, 58, 59,

07   and 60.)   Plaintiff filed a response to defendants' motion on January 26, 2011.   (Dkt. No. 62.)

08   The Court accepted plaintiff's response for filing, even though it was not submitted in a timely

09   fashion, and instructed defendants to file a reply brief addressing plaintiff's arguments. (*See*

10   Dkt. No. 63.)   Defendants filed their reply brief on February 18, 2011.   (Dkt. No. 64.)   The

11   briefing in this matter is now complete and defendants' motion for summary judgment is ripe

12   for review.

13                              DISCUSSION

14                         Summary Judgment Standard

15         Summary judgment is proper only where "the pleadings, depositions, answers to

16   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

17   genuine issue as to any material fact and that the moving party is entitled to judgment as a

18   matter of law."   Fed.R.Civ.P. 56(c).   The moving party has the burden of demonstrating the

19   absence of a genuine issue of material fact for trial.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

20   242, 257 (1986).   Genuine disputes are those for which the evidence is such that a "reasonable

21   jury could return a verdict for the nonmoving party."   *Id.*   Material facts are those which might

22   affect the outcome of the suit under governing law.   *Id.*

REPORT AND RECOMMENDATION
PAGE -6

01    In response to a properly supported summary judgment motion, the nonmoving party

02  may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts

03  demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the

04  existence of the elements essential to his case.  *See* Fed. R. Civ. P. 56(e).  A mere scintilla of

05  evidence is insufficient to create a factual dispute.  *See Anderson*, 477 U.S. at 252.  In ruling

06  on a motion for summary judgment, the court is required to draw all inferences in a light most

07  favorable to the non-moving party.  *Id*. at 248.  The court may not weigh the evidence or make

08  credibility determinations.  *Id*.

09                              Section 1983 Standard

10    In order to sustain a cause of action under 42 U.S.C. §1983, a plaintiff must show (i) that

11  he suffered a violation of rights protected by the Constitution or created by federal statute, and

12  (ii) that the violation was proximately caused by a person acting under color of state law.  *See*

13  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  To satisfy the second prong, plaintiff

14  must allege facts showing how individually named defendants caused or personally

15  participated in causing the harm alleged in the complaint.  *See Arnold v. IBM*, 637 F.2d 1350,

16  1355 (9th Cir. 1981).  The causation requirement of § 1983 is satisfied only if a plaintiff

17  demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or

18  omitted to perform an act which he was legally required to do that caused the deprivation

19  complained of.  *Id*. (quoting *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

20                                 Excessive Force

21    Plaintiff alleges in his amended complaint that Officers Jordan and Richardson used

22  more force than necessary to effectuate his arrest on January 14, 2007.  The standard for

REPORT AND RECOMMENDATION
PAGE -7

01  analyzing claims of excessive force was established by the Supreme Court in *Graham v.*

02  *Connor*, 490 U.S. 386 (1989).   *Graham* instructs that such claims are to be evaluated under the

03  Fourth Amendment's reasonableness standard:   "The question is whether the officers' actions

04  are 'objectively reasonable' in light of the facts and circumstances confronting them, without

05  regard to their underlying intent or motivation."   *Id*. at 397 (citation omitted).

06      The Court cautioned that reasonableness must be assessed from the perspective of a

07  reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and must allow

08  for the fact that "police officers are often forced to make split-second judgments – in

09  circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is

10  necessary in a particular situation."   *Id*. at 397.   The Court made clear that proper application

11  of the reasonableness standard requires careful consideration of the specific facts and

12  circumstances of each individual case, including "the severity of the crime at issue, whether the

13  suspect poses an immediate threat to the safety of the officers or others, and whether he is

14  actively resisting arrest or attempting to evade arrest by flight."   *Id.* at 396.

15      Defendants do not analyze plaintiff's excessive force claim in light of the above

16  standard nor do they even cite to the applicable standard in their motion papers.   Defendants

17  instead offer a series of arguments which are of little assistance to the Court in determining

18  whether they are entitled to judgment as a matter of law in this action.   For example,

19  defendants argue in their motion that plaintiff has presented no evidence to support or

20  corroborate his claims.   However, up until the time defendants filed their summary judgment

21  motion, plaintiff was under no obligation to present any such evidence.   Defendants also argue

22  that plaintiff's claims are "inherently implausible" and his testimony is "patently unbelievable"

REPORT AND RECOMMENDATION
PAGE -8

01 while acknowledging, as they must, that inferences are normally drawn in favor of the

02 non-moving party on summary judgment and that credibility determinations are normally

03 reserved for the jury.[1]   Finally, defendants argue that plaintiff's claims of permanent injury are

04 demonstrably false in light of subsequent arrests for stealing merchandise from another local

05 business and for assaulting his girlfriend.   Defendants fail to make clear, however, how

06 plaintiff's subsequent arrests are in any way relevant to plaintiff's excessive force claims

07 against Officers Jordan and Richardson.

08        Despite the deficiencies in defendants' briefing, plaintiff addresses the relevant issues in

09 his briefing and there appear to be sufficient materials in the record for the Court to evaluate

10 plaintiff's excessive force claim in light of the applicable standard.   The first step in evaluating

11 a claim of excessive force is to assess the amount of force used by the officers.   *See Davis v.*

12 *City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007).   There can be no question that some

13 force was used to effectuate plaintiff's arrest.   Defendants have submitted in support of their

14 summary judgment motion a Use of Force Report which was completed by Officer Richardson

15

16        [1] Defendants assert that "the Court is not required to accept or assume the truth of
testimony that is 'patently unbelievable or untrustworthy,' or require a jury to hear claims that
17 are 'inherently implausible.'"   (Dkt. No. 57 at 2.)   Defendants cite to four Ninth Circuit
opinions to support this assertion.   The first case cited, *U.S. v. Hall*, 940 F.2d 669 (9th Cir.
18 1991), is an unpublished disposition and citation to this opinion violates Ninth Circuit Rule
36-3(c).   Two of the three remaining cases cited by defendants, *United States v. Gillock*, 886
19 F.2d 220, 222 (9th Cir. 1989), and *United States v. Foster*, 711 F.2d 871, 877 (9th Cir. 1983),
involve direct appeals of federal criminal convictions where sufficiency of the evidence claims
20 were asserted.   In both cases, the Ninth Circuit made clear that credibility determinations are
the province of the jury.   Defendants fail to make clear how those cases support their
21 suggestion that the Court is permitted to make credibility determinations when considering a
motion for summary judgment.   The final case cited by defendants, *Bonin v. Calderon*, 59 F.3d
22 815 (9th Cir. 1995), is a 36 page opinion issued in a federal habeas action.   Defendants provide
no pinpoint cite to direct the court to any potentially relevant portion(s) of the opinion, and this
Court was unable to discern any obvious relevance through its brief review of the head notes.

REPORT AND RECOMMENDATION
PAGE -9

01  following plaintiff's arrest.  (*See* Dkt. No. 60, Ex. 4.)  That report indicates that Officer

02  Richardson delivered one knee strike and one elbow strike to the side of plaintiff's body when

03  plaintiff resisted Officer Jordan's efforts to handcuff him.[2]  (*See id*.)  The report also indicates

04  that the force was employed in response to plaintiff's eggressive (pulling away) and static

05  (isometric muscle tension) actions, and that plaintiff complained of a shoulder injury following

06  the incident.  (*See id*.)  Officer Jordan's report of the incident indicates that he performed an

07  arm bar maneuver in an effort to get plaintiff's arm behind his back to be cuffed.  (*See id*., Ex.

08  2.)

09      Plaintiff contends that the amount of force used was much more extensive than reported

10  by defendants and included multiple knee and elbow strikes to his ribs, chest, and back.

11  Plaintiff also contends that he twice hit his head during the encounter with officers, once on a

12  rock as Officer Jordan dragged him across the ground, and once when Officer Jordan pushed

13  him into the back seat of the patrol car.  Plaintiff asserts that he lost consciousness twice as a

14  result of his head injuries, once in the patrol car and once at the station.  He further asserts that

15  he has suffered ongoing medical problems as a result of the officers' actions including leg,

16  back, and neck pain as well as headaches, seizures, and unusual behaviors related to a mild

17  concussion.

18      Plaintiff's claims regarding the degree of force used by defendants is simply not

19  supported by the evidence in the record.  Plaintiff has provided the Court with copies of

20  medical reports which detail his condition after his encounter with police on January 14, 2007.

21  Those reports include the ambulance record prepared by the Tri-Med Ambulance personnel

22

----

[2] Knee and elbow strikes are considered Level 2 Tactics on the Tukwila Police Department use of force continuum.  (*See* Dkt. No. 62, Attach. at 2.)

REPORT AND RECOMMENDATION
PAGE -10

01 who transported plaintiff from the police station to the hospital emergency room, and various

02 reports prepared by the medical staff at Valley Medical Center where plaintiff was evaluated

03 and treated on the night of his arrest.   (*See* Dkt. No. 28, Ex. B; Dkt. No. 62, Attach. at 4-12.)

04       The ambulance record indicates that the ambulance was dispatched in response to a

05 complaint of shoulder pain.   (Dkt. No. 28, Ex. B.)   The narrative portion of the report appears

06 to indicate that plaintiff attributed the pain in his right shoulder to his fall into the ditch when he

07 was running away from the loss prevention personnel.   (*Id.*)   The report also indicates that

08 plaintiff was alert and oriented on examination, and that plaintiff specifically denied suffering

09 any dizziness.   (*Id.*)

10       The records of plaintiff's emergency room visit indicate that plaintiff's chief complaint

11 to the medical staff at Valley Medical Center was a shoulder injury, though he also complained

12 of pain in his right heel and in his right hip.   (Dkt. No. 62, Attach. at 4 and 11.)   There is no

13 indication in the records of his emergency room visit that plaintiff ever complained of any

14 injuries to his head, back, neck, ribs, or chest – injuries which would have been consistent with

15 the blows plaintiff claims were inflicted by defendants and with his current complaints

16 regarding ongoing medical issues related to officers' actions in January 2007.   In fact, the

17 records specifically note that plaintiff's head was "atraumatic" upon examination with no

18 apparent bruising, that his neck was non-tender with a full range of motion, that his chest was

19 non-tender, and that his neurological examination was normal.   (Dkt. No. 62, Attach. at 4.)

20       While at the emergency room, x-rays were taken of plaintiff's right shoulder and right

21 heel and were found to be negative, and the doctor's report described plaintiff's injuries as

22 "minor."   (*Id.*)   Ultimately, plaintiff was diagnosed with a sprained shoulder, a foot contusion,

REPORT AND RECOMMENDATION
PAGE -11

01   and an abrasion to his right arm.   (*See id*. at 4, 6 and 9.)

02         In addition to the medical records from the night of the arrest, plaintiff has also provided

03   a page from a report of a medical appointment five days after his arrest.   (*Id*. at 5.)   That page

04   reflects that plaintiff raised a concern at the subsequent medical appointment about a right

05   shoulder strain and left rib pain related to his arrest on January 14, 2007.   (*Id*.)   However, the

06   document provides little support for plaintiff's excessive force claims as it contains no

07   diagnosis related to plaintiff's complaints, it reflects no complaints of any head, back or neck

08   pain or injury, and it reveals that plaintiff never filled the prescription for pain medication that

09   he had been given at the emergency room.   (*Id*.)

10         Finally, plaintiff has provided a number of medical reports related to his complaints of

11   headaches, neck pain, back pain, and seizures.   (*See id*. at 36-44.)   However, those reports are

12   from evaluations/testing conducted in 2010, over three years after plaintiff's arrest, and plaintiff

13   offers no evidence that any of the conditions reflected in those reports is in any way related to

14   the events of January 14, 2007.   (*See id*.)

15         In sum, the record establishes that while some degree of force was employed by officers

16   on the night of plaintiff's arrest, the force did not result in any significant injury to plaintiff.

17   The next question the Court must consider is whether the amount of force employed was

18   reasonable.   Plaintiff claims that the officers' actions were not justifiable because he did not

19   resist arrest nor did he try to prevent officers from handcuffing him.   As noted above, the

20   officers' reports of the incident reflect that plaintiff did not comply, at least initially, with

21   directives that he place his hands behind his back.   While plaintiff disputes this assertion, he

22   acknowledges that he put his arms out to his sides at one point, in response to Officer Jordan's

REPORT AND RECOMMENDATION
PAGE -12

01 directive that he get into a prone position, because he misunderstood the directive.   (*See* Dkt.

02 No. 62 at 7.)

03      Whether plaintiff was trying to obstruct officers' efforts to handcuff him by placing his

04 arms out to the side, or whether he simply misunderstood Officer Jordan's directive, is not clear

05 from the record.   What is clear, however, is that at the time police encountered plaintiff,

06 plaintiff had already twice fled from loss prevention officers – once when they contacted him

07 immediately outside the store, and once when they attempted to contact him outside the

08 restaurant where he was attempting to hide.   The record demonstrates that the amount of force

09 employed was reasonable to gain control of an individual who had already demonstrated a

10 willingness to flee when provided an opportunity to do so.   Based on the foregoing, this Court

11 concludes that defendants' motion for summary judgment should be granted with respect to

12 plaintiff's excessive force claim.

13                                    Failure to Intercede

14      Plaintiff appears to allege in his amended complaint that Sergeant Gurr, who was

15 present at the scene of the arrest, failed to intervene to protect plaintiff from the unlawful

16 actions of his subordinate officers.   A supervisor may be held liable under § 1983 "if he or she

17 was personally involved in the constitutional deprivation or a sufficient causal connection

18 exists between the supervisor's unlawful conduct and the constitutional violation." *Lolli v.*

19 *County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003) (quoting *Jackson v. City of Bellingham*,

20 268 F.3d 646, 653 (9th Cir. 2001)).   The Ninth Circuit has explained that supervisors can be

21 held liable for: 1) their own culpable action or inaction in the training, supervision, or control of

22 subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is

REPORT AND RECOMMENDATION
PAGE -13

01  made; or 3) for conduct that showed a reckless or callous indifference to the rights of others."

02  *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000).

03       Sergeant Gurr submitted a declaration in support of defendants' motion for summary

04  judgment in which he explains that he responded as a supervisor to the report of a theft from

05  Southcenter Mall because the suspect had fled the scene on foot and was attempting to elude

06  officers.  (Dkt. No. 59.)  Sergeant Gurr states that he subsequently learned that Officers

07  Jordan and Richardson had apprehended the suspect, and that he arrived on the scene after the

08  officers had already handcuffed plaintiff and Officer Jordan was leading him to the patrol car.

09  (*Id.*)  Sergeant Gurr further states that he did not participate in either the pursuit or the arrest,

10  and that he at no time saw either officer act inappropriately towards plaintiff.  (*Id.*)  Plaintiff

11  offers no evidence to the contrary.  Accordingly, defendants' motion for summary judgment

12  should be granted with respect to plaintiff's claims against Sergeant Gurr.

13                        Denial of Medical Attention

14       Plaintiff asserts in his amended complaint that defendants denied him proper medical

15  attention for injuries suffered during the course of his arrest.  Plaintiff's claim of inadequate

16  medical care arises under the Due Process Clause of the Fourteenth Amendment rather than

17  under the Eighth Amendment because plaintiff was not a convicted prisoner, but was merely in

18  police custody, at the time of the alleged denial of medical care.  *See Carnell v. Grimm*, 74

19  F.3d 977, 979 (9th Cir. 1996).

20       The Ninth Circuit has made clear that, with respect to medical needs, "the due process

21  clause imposes, at a minimum, the same duty the Eighth Amendment imposes:  'persons in

22  custody ha[ve] the established right to not have officials remain deliberately indifferent to their

REPORT AND RECOMMENDATION
PAGE -14

01  serious medical needs.'"  *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)

02  (citing *Carnell*, 74 F.3d at 979.)   A medical need is deemed serious if the failure to treat the

03  condition could result in further significant injury or the "unnecessary and wanton infliction of

04  pain."  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citing *Estelle v. Gamble*, 429

05  U.S. 97, 104 (1976)).   In order to establish deliberate indifference, a plaintiff must show a

06  purposeful act or failure to act on the part of the defendants.   *McGuckin*, 974 F.2d at 1060.

07      Officer Jordan's report of plaintiff's arrest states that medical attention was sought for

08  plaintiff after he began complaining of shoulder pain at the police station.   (Dkt. No. 60, Ex. 2.)

09  Plaintiff asserts in his response to defendants' summary judgment motion that Officer Jordan

10  and Sergeant Gurr knew he needed treatment at the scene of the arrest and failed to provide it.

11  (*See* Dkt. No. 62 at 9-10.)   Plaintiff suggests that the fact that he lost consciousness both in the

12  patrol car and at the station, and the fact that he could barely move his right arm, were indicative

13  of his need for immediate medical attention.   (*Id*.)

14      As noted above, there is no evidence in the record that plaintiff suffered any sort of head

15  injury during the course of his arrest.   With respect to the shoulder injury, there is no evidence

16  that the failure to treat that injury sooner resulted in further significant injury.   And, in fact, the

17  record reflects that plaintiff received relatively prompt treatment for his shoulder injury.

18  Plaintiff was arrested at approximately 8:30 p.m. (*see* Dkt. No. 60, Exs. 2, 3, and 4), the fire

19  department began their evaluation of plaintiff before 9:00 p.m. (*see* Dkt. No. 28-2 at 11-12),

20  and plaintiff arrived at the hospital via ambulance just after 9:30 p.m. (*see* Dkt. No. 62-1 at 11).

21  There is simply no evidence of any significant delay in plaintiff receiving medical treatment for

22  his injuries.   Accordingly, defendants are entitled to summary judgment with respect to

REPORT AND RECOMMENDATION
PAGE -15

01   plaintiff's claim that they denied him timely medical attention.

02                                   CONCLUSION

03          For the reasons set forth above, this Court recommends that summary judgment be

04   granted in favor of defendants and that plaintiff's amended complaint, and this action, be

05   dismissed with prejudice.   A proposed order accompanies this Report and Recommendation.

06          DATED this 22nd day of April, 2011.

07

08                                                 _____
                                                   Mary Alice Theiler
09                                                 United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22


REPORT AND RECOMMENDATION
PAGE -16